# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| HILDENE OPPORTUNITIES MASTER FUND, LTD.,<br><br>             Plaintiff,<br><br>v.<br><br>ARVEST BANK, *et al.*<br><br>             Defendants. | Case No. 4:14-cv-01110-ODS |

## DEFENDANT ARVEST BANK'S REPLY SUGGESTIONS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS GROUNDS

SQUIRE PATTON BOGGS (US) LLP
Joseph C. Weinstein (admitted *pro hac vice*)
joe.weinstein@squirepb.com
Sean L. McGrane (admitted *pro hac vice*)
sean.mcgrane@squirepb.com
4900 Key Tower, 127 Public Square
Cleveland, OH  44114
Tel:  (216) 479-8500
Fax:  (216) 479-8780

*Attorneys for Defendant Arvest Bank*

SHOOK, HARDY & BACON L.L.P.
Michael S. Cargnel
mcargnel@shb.com
Jenna Sheldon-Sherman
jsherman@shb.com
2555 Grand Boulevard
Kansas City, MO  64108
Tel:  (816) 474-6550
Fax:  (816) 421-5547

*Attorneys for Defendant Arvest Bank*

## PRELIMINARY STATEMENT

Hildene's opposition brief (the "Opposition") is a jumble of contradictions, full of after-the-fact legal arguments that are contradicted by both the allegations of the Second Amended Complaint and the undisputed factual record. Hildene cannot create material questions of fact simply by contradicting itself, and ultimately Hildene's arguments are nothing more than a distraction – an attempt to shift focus away from the following undisputed facts and legal principles that render Hildene's claim for tortious interference against Arvest Bank untimely:

1. As U.S. Bank's purported assignee, Hildene is subject to the same statute of limitations defenses that can be asserted against U.S. Bank.

2. U.S. Bank is located in Massachusetts and would have suffered any financial injury there; accordingly, under the Eighth Circuit's *Great Plains* decision, Massachusetts' three year statute of limitations governs U.S. Bank's claim against Arvest Bank.

3. Massachusetts' three year statute of limitations begins to run "when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." *Shay v. Walters*, 702 F.3d 76, 80 (1st Cir. 2012).

4. The latest possible event that was "reasonably likely to put" U.S. Bank on notice of its injury was the closing of the Union Bank Transaction on June 22, 2012. The three year statute of limitations thus expired no later than June 22, 2015, and U.S. Bank's claim for tortious interference against Arvest Bank – brought on August 7, 2015 – is time-barred.

None of the above can be disputed. Accordingly, Arvest Bank respectfully requests that this Court grant it summary judgment on Count One of the Second Amended Complaint.

A. **Hildene's arguments are inconsistent with Massachusetts law.**

Hildene does not contest that it is subject to the same statute of limitations defenses as its purported assignor, U.S. Bank: If U.S. Bank's claim is time-barred, then so is Hildene's.

Hildene also does not contest that U.S. Bank (i) has been the sole holder of the Debentures during the relevant time period, (ii) is located in Massachusetts, (iii) was to be paid in Massachusetts and (iv) suffered purely economic damages in connection with its claim against Arvest Bank. Based on these undisputed facts, it is clear that Massachusetts' three year statute of limitations applies to U.S. Bank's claim against Arvest Bank. *See Great Plains Trust Co. v. Union Pacific R.R. Co.*, 492 F. 3d 986, 993 (8th Cir. 2007). The only issue raised by Hildene in the Opposition concerns *when* the Massachusetts statute of limitations began to run, but all of Hildene's arguments are wrong under Massachusetts law.

      1.    **Hildene conflates the tort claim against Arvest Bank with the contract claim against Bannister.**

The Indenture contract between U.S. Bank and Bannister allowed Bannister to defer its periodic interest payments to U.S. Bank for five years. *See* ECF No. 121-4 at § 2.11. Bannister invoked this right in 2009 and the five-year deferral period expired in 2014. The principal argument now made by Hildene is that U.S. Bank was not actually injured until the expiration of the deferral period in 2014, and thus the statute of limitations did not begin to run on any claims until that point in time. This argument appears to deliberately conflate (i) U.S. Bank's claim for tortious interference with contract against Arvest Bank (Count One) with (ii) U.S. Bank's claim for breach of contract for failure to pay interest when due against Bannister (Count Three). These are distinct claims and the tort claim accrued no later than June 2012 as a matter of well-settled Massachusetts law:

|  | **Count One (Tortious Interference with Contract)** | **Count Three (Breach of Contract)** |
|---|---|---|
| **Claim asserted against** | Arvest Bank only | Bannister only |
| **Nature of Claim** | Tort | Contract |
| **Conduct allegedly giving rise to liability** | Persuaded or conspired with Bannister to allow Arvest Bank's purchase and assumption of Union Bank's assets and liabilities without assuming the Bannister TruPS obligations | Bannister's breach of Section 5.1(a) of the Indenture, which required Bannister to resume paying interest at the conclusion of the five-year deferral period |
| **When conduct is alleged to have occurred** | June 2012 | June 2014 |

The crux of the tort claim is that the assets of Union Bank were necessary to ensure that Bannister could repay the TruPS. As argued by Hildene, the TruPS could not be repaid once those assets were transferred to Arvest Bank in June 2012 (without Arvest Bank assuming the TruPS obligations). As next discussed, this transfer of Union Bank's assets was the event that triggered the statute of limitations as to U.S. Bank's tortious interference claim against Arvest Bank.

### 2. The statute of limitations began to run upon the closing of the Union Bank Transaction, not at the expiration of the deferral period.

Under Massachusetts law, the statute of limitations for a tortious interference claim begins to run "when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." *Shay*, 702 F.3d at 80 (1st Cir. 2012); *see also Lease America v. Rowe International*, 2014 U.S. Dist. LEXIS 43417, at *13 (D. Mass. March 31, 2014) (holding that statute of limitations for tortious interference claim began to run on date alleged tortfeasor caused party to terminate its underlying contract). Here, the "event" that was "reasonably likely to put" U.S. Bank "on notice that" Arvest Bank "may have

- 3 -

Case 4:14-cv-01110-ODS   Document 140   Filed 10/31/16   Page 4 of 11

caused [it] injury" was when the sale of Union Bank's assets closed on June 22, 2012. As proof of this, the Court need look no further than the Second Amended Complaint, which alleges that "***Arvest procured and/or induced the breach of the Indenture when it acquired Union Bank's assets and certain liabilities in or around June 2012.***" SAC at ¶¶ 26-27.

The cases cited by Hildene in the Opposition actually support the conclusion that the statute of limitations on the tortious interference claim began to run in June 2012. For example, in *Kennedy v. Goffstein*, 62 Mass. App. Ct. 230 (App. Ct. Mass. 2004), the court held that the statute of limitations in a tort action begins to run when the plaintiff suffers "appreciable harm," which the court defined as "injury, loss or detriment that is c*apable of being measured or perceived.*" 62 Mass App. Ct. at 233 (emphasis added). There is no doubt that U.S. Bank could have "perceived" that it had been injured by June 22, 2012, when the Union Bank Transaction closed without Bannister's TruPS being assumed.[1]

### 3. Hildene's untimely argument regarding an "Event of Default" also fails under Massachusetts law.

On October 27, 2016, Hildene filed a so-called "Motion for Leave to File Supplemental Authority," ECF No. 139, which is nothing but a new argument untimely-raised. Hildene's new (and incorrect) argument is that the statute of limitations on U.S. Bank's tortious interference

---

[1] *John Beaudette, Inc. v. Sentry Ins. A. Mut. Co*., 94 F. Supp. 2d 77 (D. Mass. 1999) is similarly inapposite. *John Beaudette* did not involve a tortious interference claim, but rather various claims for negligence and indemnification. The court held that the statute of limitations on the indemnification claim did not begin to run until after a verdict was entered because, prior to that point, there was no measureable or perceivable amount of damages. *Id.* at 107. Here, by contrast, any damages incurred by U.S. Bank arising out of Arvest Bank's alleged tortious interference were knowable (and known) as of June 22, 2012, when Union Bank transferred substantially all of its assets to Arvest Bank. Hildene's purported reliance on the Missouri case of *Beyond Batten Disease Found. v. Children's Mercy Hosp.*, 2016 U.S. Dist. LEXIS 98568 (W.D. Mo. July 28, 2016), is also misplaced. *Beyond Batten* actually supports summary judgment for Arvest Bank; there, the court held (under Texas law) that "damages are sustained and capable of ascertainment when the fact of damage can be discovered or made known," *id.* at *6, which here would be the closing of the Union Bank Transaction.

- 4 -

Case 4:14-cv-01110-ODS   Document 140   Filed 10/31/16   Page 5 of 11

claim did not begin to run until September 14, 2012, when a contractual cure period applicable to Bannister expired.

First, as a threshold matter, Hildene's "supplemental authority" is a decision from a lower appeals court in Connecticut, but Massachusetts law (which holds that the statute of limitations runs from June 2012) – not Connecticut law – applies here. *See* ECF No. 121 at pp. 7-11. In fact, Arvest Bank noted in its Suggestions in Support that, under *Great Plains*, the fact that U.S. Bank maintains an office in Connecticut did not render Connecticut the relevant jurisdiction, since there is no evidence that U.S. Bank was to be paid in Connecticut. *Id.* at n.7.

Second, the "supplemental authority" provided by Hildene would be inapposite even if Connecticut law did apply. *Vaccaro v. Shell Beach Condominium, Inc.*, 169 Conn. App. 21 (2016), on which Hildene relies, is not a tort case. *Vaccaro* does not hold that a statute of limitations on a tortious interference claim is tolled during a cure period – the case does not even involve a cure period or a tortious interference claim at all. The case does not hold, as Hildene suggests, that a cause of action in tort is not complete until a cure period expires; in fact, the Connecticut statute at issue in that case governs *contract* claims, not tort claims.[2]

Third, even if the contractual argument made by Hildene applied (and it does not), courts in other jurisdictions have expressly rejected the argument that a demand to cure tolls the running of a statute of limitations even in a breach of contract setting. One New York court, for example, recently held that a demand to cure "seeks a remedy for a preexisting wrong" and does not toll the statute of limitations, since the plaintiff "suffers legal wrong at the moment defendant allegedly breached" the contract, and "a cause of action exists" at the time of the breach,

---

[2] Arvest Bank also pointed out that U.S. Bank's claim would be untimely under Connecticut law as well, because Connecticut (like Massachusetts) applies a three year statute of limitations to claims for tortious interference with contract, and the statute begins run "from the date of the act or omission complained of." ECF No. 121 at n.7.

- 5 -

irrespective of whether a subsequent demand for cure is made.  *Deutsche Bank Nat'l Trust Co. v. Flagstar Capital Mkts. Corp.*, 36 N.Y.S. 3d 135, 140-41 (1st Dep't. 2011); *see also U.S. Bank v. Dexia Real Estate,* 2016 U.S. App. LEXIS 4771, at *5 (March 16, 2016) (rejecting argument that statute of limitations only began to run "when demand is made and refused," and holding that statute began to run earlier in time when breach occurred).  The same logic applies here: U.S. Bank suffered the alleged "legal wrong" at the moment Arvest Bank allegedly induced Bannister to breach the Indenture, which occurred in June 2012 and is unrelated to any demand for cure later issued to Bannister.

Massachusetts courts have held similarly.  In *John G. Alden Ins. Agency of Mass., Inc. v. John G. Alden Ins. Agency of Fla.*, 2003 U.S. Dist. LEXIS 21476 (D. Mass. Nov. 26, 2003) (rev'd on other grounds), the court held that the statute of limitations had started to run in 1986, when the defendant anticipatorily breached the contract.  The court rejected the plaintiff's argument that the statute only started to run at a later period in time after the defendant "gave written notice to [defendant] and initiat[ed] the thirty-day cure period." *Id.* at *4.  Hildene's argument should likewise be rejected here.  As to a tort claim, there is no question that the statute runs from the earliest time injury is perceptible.  *See, e.g., Shay*, 702 F.3d at 80.

### 4. **Hildene and U.S. Bank have admitted that they perceived any injury by June 22, 2012 at the very latest.**

U.S. Bank's and Hildene's own contemporaneous statements show that they perceived injury (at the very latest) by the time the Union Bank Transaction closed, and indeed perceived injury even before that date.  In March 2012, months before the closing of the Union Bank Transaction, U.S. Bank wrote to Bannister and indicated, in the guise of a "question," that the transfer of Union Bank's assets to Arvest Bank, without the assumption of the TruPS obligations, would constitute a breach of the Indenture.  ECF No. 121-3 (Bannister response to U.S. Bank

letter). And following the close of the Union Bank Transaction, U.S. Bank declared on July 16, 2012 that the Union Bank Transaction constituted a breach of the Indenture – proof that U.S. Bank could have and in fact did perceive its injury by that time.

Hildene also clearly understood the closing of the Union Bank Transaction to be the event that would cause injury. For example, on February 1, 2012 – two days after the Union Bank Transaction was publicly announced and months before the Transaction even closed – a Hildene employee wrote: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. P. On April 6, 2012, attorneys for Hildene wrote to attorneys for Bannister and argued that "the proposed transaction with Arvest Bank in its current form constitutes a violation of Section 3.7 of the Indenture. Please advise immediately if your client will abandon the proposed transaction . . . so that Hildene may assess its options, *including litigation or other means to stop the transaction*." ECF No. 121-15. And on June 28, 2012, Brett Jefferson – the founder of Hildene – wrote: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. Q. Like U.S. Bank, Hildene clearly perceived the closing of the Union Bank Transaction to be the act which would cause it any harm, and not any later events.³

B. **U.S. Bank is the party that allegedly suffered damages in this case.**

Hildene also makes a throwaway argument in its Opposition that Missouri law should apply because Hildene is only "technically" acting on behalf of U.S. Bank and Hildene "truly

---

³ Rather than sue, U.S. Bank stated in a Notice dated July 17, 2012, that it did not intend to take further action in connection with the Union Bank Transaction. ECF No. 121-7 at p. 2. And in fact, U.S. Bank took no action for more than three years thereafter, until it purportedly assigned its claim against Arvest Bank to Hildene. By then it was too late.

represents" the downstream note "holders who suffered damages." Opp. at 9. This argument fails and, again, is plainly inconsistent with prior positions taken by Hildene.

Hildene is purportedly acting as the assignee of U.S. Bank, and thus it is U.S. Bank's location (Massachusetts) that provides the relevant statute of limitations under *Great Plains*. In an attempt to evade *Great Plains*, Hildene writes that U.S. Bank "suffered no actual harm" and "would have suffered no economic injury in any event" – only the downstream note holders allegedly did – and so Massachusetts' statute should not apply. Opp. at 9. But here again, this after-the-fact argument is totally inconsistent with the Second Amended Complaint, where Hildene alleges:

> As a result of Arvest's actions as set forth above, ***U.S. Bank sustained substantial economic losses in the form of loss of payments of principal and interest under the TruPS***.

SAC at ¶ 68. Hildene's new argument should be rejected. Hildene cannot attempt to create material questions of fact by now arguing that U.S. Bank suffered no harm after having pled that U.S. Bank sustained substantial economic harm.

Moreover, this Court held in its order granting the Motion to Dismiss the First Amended Complaint that Hildene was not a real party in interest for purposes of enforcing the Indenture, because Hildene (like all downstream noteholders) is neither a party to the Indenture nor a third party beneficiary of the Indenture. ECF No. 57. Hildene then filed the Second Amended Complaint as the purported assignee of U.S. Bank, a party to the Indenture. But Hildene cannot have it both ways – Hildene cannot claim to be acting as the assignee of U.S. Bank, prosecuting U.S. Bank's claim and seeking to recover U.S. Bank's damages, while at the same time arguing that it "truly represents" the downstream note holders. If in fact Hildene "truly represents" the note holders and is not acting as the assignee of U.S. Bank, then this case should be dismissed entirely, since (as this Court previously wrote) Hildene and the note holders cannot "sue the

entities who were obligated to pay" under the Indenture unless they can establish they are third party beneficiaries of the Indenture (which Hildene has never done). ECF No. 57 at 8-9.

## CONCLUSION

Arvest Bank respectfully submits that it is undisputed that U.S. Bank's claim for tortious interference is barred by the applicable statute of limitations, and summary judgment should accordingly be granted for Arvest Bank.[4]

Respectfully submitted,

Dated: October 31, 2016

**/s/ Michael S. Cargnel**
SHOOK, HARDY & BACON L.L.P.
Michael S. Cargnel
mcargnel@shb.com
Jenna Sheldon-Sherman
jsherman@shb.com
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
Fax: (816) 421-5547

SQUIRE PATTON BOGGS (US) LLP
Joseph C. Weinstein (admitted *pro hac vice*)
joe.weinstein@squirepb.com
Sean L. McGrane (admitted *pro hac vice*)
sean.mcgrane@squirepb.com
4900 Key Tower, 127 Public Square
Cleveland, OH 44114
Tel: (216) 479-8500
Fax: (216) 479-8780

*Attorneys for Defendant Arvest Bank*

---

[4] In its order granting in part, denying in part and deferring in part the Defendants' Motions to Dismiss, this Court correctly held that the Second Amended Complaint "does not relate back to its original Complaint or First Amended Complaint." ECF No. 78 at n.4. In its Opposition, Hildene writes that "it bears note that Arvest did not address Plaintiff's request" to reconsider this holding. Arvest Bank did not address this request because there is nothing to address: The Court's holding is correct, unambiguous and law of the case, and Hildene cannot disrupt this holding through a vague "request" buried in its summary judgment briefs. Thus, the date on which the Second Amended Complaint was filed – August 7, 2015 – is the relevant date against which to measure Arvest Bank's statute of limitations defense.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record through this Court's Electronic Case Filing system, and by electronic mail, this 31st day of October, 2016.

/s/ Michael S. Cargnel