IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| HILDENE OPPORTUNITIES MASTER FUND LTD., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action |
| vs | ) ) | Case No. 4:14-cv-01110-ODS |
| ARVEST BANK, FAYETTEVILLE, ARKANSAS; BANNISTER BANCSHARES, INC.; and JEFFREY JERNIGAN, | ) ) ) ) | Hon. Ortrie D. Smith |
| Defendants. | ) | |

**PLAINTIFF HILDENE OPPORTUNITIES MASTER FUND LTD.'S REPLY SUGGESTIONS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT III OF THE SECOND AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

In its Order, Dkt. 170, this Court recognized "Plaintiff's response to Bannister's summary judgment motions…may address many issues Plaintiff's reply suggestions in support of its partial motion may also address." Indeed, just as in its affirmative Motion for summary judgment, Bannister's Opposition, Dkt. 156, spends but two paragraphs of its legal section arguing Hildene and the TruPS-holders do not have a valid breach of contract claim, and the remaining pages arguing its own affirmative defenses. And just as in that Motion, Bannister has the burden to prove those affirmative defenses, and it fails to meet that burden in its Opposition.

As discussed in Hildene's Opposition to Bannister's affirmative motion, Dkt. 172, first, while Bannister argues that certain agreements with government regulators prevented performance and thus Hildene does not have damages, Bannister *has not pled* any affirmative defense regarding lack of damages, nor can Bannister explain why an alternative sale through

1

Section 363 of the Bankruptcy Code or to a seller for actual value would not have resulted in a payout to the TruPS-holders. To the contrary, Bannister's Opposition concedes that were Union Bank to receive more money, some percentage of that "should go to the TruPS holders." Opposition, at 8. As a result, Bannister concedes that had it gotten *more* than $1 for Union Bank's assets instead of conspiring in a backroom deal with Arvest, then the TruPS holders would have received something in return. For these reasons, among others discussed in Hildene's Opposition, the damages argument fails.

Second, the affirmative defenses that Bannister did plead – champerty and estoppel – also fail. Because Hildene seeks to "collect a legitimate claim" and was not formed solely to pursue the assigned claims, New York champerty law would not preclude the valid assignment from U.S. Bank to Hildene. And because Bannister does not and cannot present clear and satisfactory evidence of material reliance on or prejudice from U.S. Bank's 2012 statements that it did not intend to take further action – and that U.S. Bank and Hildene consistently asserted their belief that the Union Bank transaction breached the Indenture – there can be no estoppel or waiver.

Finally, as to Bannister's perfunctory argument that U.S. Bank did not give allegedly-required notice of acceleration of principal and interest on the TruPS is belied by the facts, the text of the contract, and the law. In 2013, U.S. Bank gave notice against Bannister "for all outstanding principal and accrued and unpaid interest due on the Debentures and all other amounts due and owing under the Indenture and Declaration of Trust," and the operative complaint seeks to hold Bannister liable for "all outstanding principal and accrued interest owing under the Trust, Indenture and Debentures." Accordingly, even if Section 5.1 of the Indenture required notice to accelerate, which is at best ambiguous, Bannister received such notice.

In the end, this case is about a simple refusal to pay back a debt, where Bannister's own president understands that the TruPS obligations "were a liability for Union Bank as well," because "[t]he money from the TruPS was used as equity at the Union level." (Ex. 1, Raupp Dep.). But Bannister and Arvest structured the Union Bank asset sale such that those TruPS obligations would likely never be paid despite Arvest realizing all of the benefits of Union Bank's assets. Bannister should not be able to escape its obligations without remedy to its creditors, and Hildene's Motion for Summary Judgment should be granted.

### REPLY TO BANNISTER'S RESPONSE TO HILDENE'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Bannister fails to raise a disputed issue of material fact, as it fails to present adequate support or evidence to controvert any material fact presented by Hildene. The record therefore supports ruling as a matter of law in favor of Hildene. *Operating Eng'rs Local No. 101 Pension Fund v. K.C. Excavating & Grading, Inc.*, No. 01-0087-CV-W-SOW, 2002 WL 1492103, at *1 (W.D. Mo. March 11, 2002) (noting that responses to the material facts generally disputing the form "rather than the substance of the proposed facts" failed to controvert the facts); *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."). Bannister does not controvert Facts 2-5, 7-8, 10, 12, 14, 18-20, 22, and 25-27, and those Facts must be deemed admitted. W.D. Mo. L.R. 56.1 ("All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party.").

Hildene also submits that Bannister's responses to Facts 1, 6, 9, 11, 13, 15-17, 21 and 23-24 are insufficient to create a genuine dispute as to any of the matters asserted by Hildene because they (a) do not "specifically controvert" the substance of the Facts, but instead attempt

to provide additional legal argument or purported factual information to "explain" the meaning of Hildene's Fact, which additional information should be disregarded; or (b) do not dispute the substance of the matter with adequate and accurate record support, and/or give an unreasonable or misleading construction to record evidence. *Katekaru v. Egan*, No. 4:13-CV-00349-DGK, 2015 WL 4727412, at *1 (W.D. Mo. Aug. 10, 2015) ("To specifically controvert a factual position, the nonmoving party must "refer specifically to those portions of the record upon which [he] relies."), citing W.D. Mo. L.R. 56.1; *K.C. Excavating*, 2002 WL 1492103, at *1.

Thus, all of Hildene's Facts 1-27 should be deemed admitted for summary judgment purposes. Bannister's insufficient "disputes" are further described immediately below:

Fact 1: Whether Bannister is "dissolved" or "dissolving" is not material to whether it borrowed $20 million to fund its operating subsidiary, Union Bank, under the terms of TruPS contained within a certain "Indenture" dated as of December 17, 2003 (which Bannister admits). Moreover, the Missouri Secretary of State lists Bannister as "Voluntarily Dissolved," and Bannister has filed no reports with the state since 2013. Ex. 2.

Fact 6: Bannister does not question what Section 5.1(a) says, but merely wants to qualify the statement with some text from later in Section 5.1. While that does not "controvert" the fact, Bannister is also incorrect about the purported relevance of that later text.

The pertinent part of Section 5.1 to which Bannister refers, states:

> If an Event of Default occurs and is continuing with respect to the Debentures, then, and in each and every such case, unless the principal of the Debentures shall have already become due and payable, either the Trustee or the holders of not less than 25% in aggregate principal amount of the Debentures then outstanding hereunder, by notice in writing to the Company (and to the Trustee if given by Securityholders), may declare the entire principal of the Debentures and the interest accrued thereon, if any, to be due and payable immediately, and upon any such declaration the same shall become immediately due and payable.

4

Ex. 3 (Indenture, at § 5.1).  But as described in Hildene's Opposition to Bannister's Motion for Summary Judgment, Dkt. 172 at 19-21, Hildene and U.S. Bank complied with any potential notice requirement via (a) a 2013 notice (Ex. 4) "for all outstanding principal and accrued and unpaid interest due on the Debentures and all other amounts due and owing under the Indenture and Declaration of Trust" arising out of Bannister's filing of a Notice of Dissolution and (b) the filing of the Second Amended Complaint, which gave further notice to Bannister that Hildene would seek to have Bannister held liable for "all outstanding principal and accrued interest owing under the Trust, Indenture and Debentures" (Dkt. 58, ¶ 74).

Fact 9: It is unclear what the difference is between "Hildene owns an interest in the TruPS" (Fact 9) and "Hildene is an indirect and very small holder of the TruPS" (Bannister's "denial" of Fact 9).  Bannister's attempt to editorialize here should be ignored.

Fact 11: It appears that Bannister merely wanted Fact 12, regarding liabilities, to be part of Fact 11, regarding assets.  Additionally, because *all* evidence is that there will not be a cash distribution in 2017, *see* Dkt. 172, at ¶ 29, that right to cash payments is the only actual value besides a small amount of cash that existed in Bannister stock, and that value is essentially zero.

Fact 13: It is unclear what Bannister seeks to deny here, but Bannister does not deny that (a) Arvest did not assume Bannister's TruPS obligations, and (b) U.S. Bank as Trustee declared Bannister in default under the Successor Obligor Provision of the Indenture.  Those facts are undisputed for purposes of summary judgment.

Facts 15-16: The previously-cited Jefferson Declaration provides support for the need for Hildene to receive a vote of the majority of the PreTSL XII holders in order to sue Arvest and Bannister and that Hildene received such approval.  Bannister does not controvert the Jefferson Declaration, and thus Facts 15 and 16 are undisputed.  Additionally, it is not apparent why

5

whether the Hildene entity named in the Dkt. 57 Order is a "real party in interest or a third-party beneficiary" is relevant to whether Hildene had to receive a vote of the majority of the PreTSL XII holders in order to sue Arvest and Bannister or that Hildene received such approval.

Fact 17: Although Bannister cites generally to this Court's Dkt. 57 Order, it makes no argument that under any alleged limitations period in Connecticut, that a 2014 lawsuit would be untimely. Bannister has failed to successfully controvert Fact 17.

Facts 21: Bannister does not deny that it and Union Bank were located in Missouri and that certain "conduct at issue" occurred in this state. Further, the facts that Hildene voluntarily dismissed its Connecticut action and re-filed in Missouri in December 2014 are undisputed matters of public record of which this Court can take judicial notice.

Fact 23: Hildene respectfully states that it correctly characterized this Court's July 16, 2015 Order, Dkt. 57, which speaks for itself.

Fact 24: Even accepting Bannister's "denial" as true, Bannister does not controvert the *material* fact that the claims in this matter have been assigned from U.S. Bank to Hildene.

Accordingly, Hildene hereby requests that all of Hildene's Facts 1-27 be deemed admitted for summary judgment purposes as against Bannister.

## **REPLY ARGUMENT AND AUTHORITY**

Hildene hereby incorporates pages 19-28 of its Opposition to Bannister's Motion for Summary Judgment, Dkt. 172.

## CONCLUSION AND REQUESTED RELIEF

Hildene respectfully requests that its Motion for Partial Summary Judgment be granted, judgment be entered on Count III of its Second Amended Complaint against Bannister, and any statute of limitations defenses raised by Bannister be dismissed, and any other relief to which it may be entitled.

Dated: January 4, 2017                    By: /s/ Daniel B. Hodes

                                              Daniel B. Hodes (MO #60616)
GERMAN MAY PC
1201 Walnut, Suite 2000
Kansas City, MO 64106
Telephone: 816-471-7700
Fax: 816-471-2221
E-mail: danh@germanmay.com

Ethan A. Brecher (*pro hac vice*)
LAW OFFICE OF ETHAN A. BRECHER, LLC
600 Third Avenue, 2nd Floor
New York, NY 10016
Phone: (646) 571-2440
Fax: (888) 821-0246
Email: ethan@ethanbrecherlaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification.

    /s Daniel B. Hodes

Attorney for Plaintiff